Claribel Toboldt is, and for sometime has been the owner of the title to the lands and premises described in the bill of foreclosure.
The events resulting in this bill are: *Page 510 
1. Carl W. Toboldt, the husband of Claribel Toboldt, is now deceased.
2. In his lifetime he became and was indebted to the complainant in a large sum of money.
3. For the purpose of obtaining that credit, he filed with the bank a signed statement of his assets and liabilities.
4. In said statement was falsely included as an item of assets, the lands and premises above mentioned at a considerable valuation.
5. That his indebtedness became overdue and unpaid.
6. In an interview with certain officers of the bank he informed said officers that the title to said premises was in the name of his wife, the present defendant.
7. That the banking authorities insisted the said indebtedness be liquidated.
8. That the officers of the bank notified both Toboldt and his wife that proceedings of a criminal nature would be taken against Toboldt unless the debt was paid.
9. That an officer of the bank arranged with Mrs. Toboldt that a mortgage should be given upon her property, and that a sufficient sum of money would be loaned by the bank to her, in order that she would be in position to pay Toboldt's indebtedness.
10. That a bond and warrant, and mortgage were prepared with both Toboldt and his wife as mortgagors and obligors.
12. That after a period Toboldt and his wife appeared at the bank with the bond, warrant and mortgage now being foreclosed, which instruments were signed and acknowledged.
13. In the mortgage presented by Toboldt, he was not named as a mortgagor, and did not sign the same, although he was named in and executed the bond and warrant.
14. That Mrs. Toboldt gave her collateral note (reciting said bond and mortgage as being the security) to the bank, received therefor credit to her account and paid the bank therefrom the amount due from Toboldt, and received a small sum to balance the items in cash from the bank.
Default being made in the payment of the note, the bank proceeded to foreclose. *Page 511 
Mrs. Toboldt answers, alleging duress, no consideration, and that said bond and mortgage were given as security for the debt of her husband.
The mortgage executed by Mrs. Toboldt on her separate estate without her husband joining is ineffective as a mortgage lien and incapable of foreclosure. Realty Title and Mortgage Co. v.Schaaf, 81 N.J. Eq. 115; Bennett v. Orchard, 4 N.J. Mis. R.807.
A lien will be declared and enforced against the separate estate of a married woman for a debt contracted by her on the credit of her estate, and which she intended to charge therewith by the mortgage sought to be foreclosed. Bennett v. Orchard,supra.
Was this mortgage given to secure a debt contracted by Mrs. Toboldt on the credit of her separate estate?
The proof is convincing that this must be answered in the affirmative. Toboldt owed the bank money obtained (to some extent at least) upon credit obtained by him upon his false statement that he owned the premises in question. Proceedings were threatened. Mrs. Toboldt, after first refusing to mortgage her property, agreed to do so to save her husband from "going to jail." The note was as above stated made by her, money received by and paid out by her. It is true that credit would not have been given her or her note discounted unless the proceeds were to be so applied.
I find there was no duress.
Using the language of Vice-Chancellor Leaming, in Realty Titleand Mortgage Co. v. Schaaf, supra:
"The evidence discloses that the real estate described in the mortgage was the separate estate of the mortgagor and that the mortgage was executed by the mortgagor for money loaned to her by the mortgagee on the credit of her separate estate, the loan having been made at the time the mortgage was executed.
"It is well settled in this state that under the circumstances stated, the instrument intended as a mortgage is not valid as a morgage or specific lien; the failure to comply with the statutory requirements is fatal to the mortgage as such. *Page 512 
It is, however, equally well settled that under the circumstances stated, a court of equity will declare and enforce a lien against the separate estate for the debt intended to be secured by the mortgage. While the mortgage is not effective as a lien, it is effective to show that the debt was contracted on the credit of the married woman's separate estate, and that she intended it to be chargeable thereon. Wilson v. Brown, 13 N.J. Eq. (2Beas.) 277; Harrison v. Stewart, 18 N.J. Eq. (3 C.E. Gr.)451; Armstrong v. Ross, 20 N.J. Eq. (5 C.E. Gr.) 109;Homeopathic Mutual Life Insurance Co. v. Marshall, 32 N.J. Eq.
(5 Stew.) 103, 112. No equitable principle can find more perfect justification than this in its inherent quality of justice and fairness; it is merely operative to restore that which is due in conscience. An exemplification of the principle is to be found in those cases in which a married woman has contracted to sell separate estate under an agreement which cannot be specifically enforced against her, and has received a portion of the purchase price; in such cases courts of equity have declared liens for the amounts paid and thus enforced restitution. Pentz v. Simonson, 13 N.J. Eq. (2 Beas.) 232,235; Pierson v. Lum, 25 N.J. Eq. (10 C.E. Gr.) 390.
"The bill is silent touching the nature of the indebtedness for which the mortgage was given. While the prayer is probably adequate for appropriate relief, I think the bill should be amended to conform to the proofs before a decree is signed. Upon such amendment being made I will advise a decree declaring a lien for the amount of the debt and directing its enforcement by a sale of the premises described in the bill."
I will, therefore, follow the practice adopted by Vice-Chancellor Leaming. *Page 513